**[Cite as *State v. Svec*, 2020-Ohio-6793.]**

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | | C.A. No. 18CA011341 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| RONALD SVEC | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No. 15CR092794 |

DECISION AND JOURNAL ENTRY

Dated: December 21, 2020

TEODOSIO, Judge.

{¶1} Defendant-Appellant, Ronald Svec, appeals from his convictions in the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2} Mr. Svec shot his wife several times with a .45 semi-automatic firearm. She collapsed on their kitchen floor a few feet away from where their four-year-old grandson was eating his pancakes. When help arrived in response to Mr. Svec's 911 call, his wife was still alive, but unresponsive. Police removed a knife from her right hand, and paramedics transported her to the hospital. Medical intervention was unsuccessful, and she died shortly thereafter.

{¶3} Mr. Svec informed the police that he shot his wife because she came at him with a knife and blocked his path out of their home. He described how she began yelling at him and poking him with the knife as he attempted to watch television in the living room. He described walking to his bedroom, closing himself inside, and lying on his bed for a few minutes before she

barged into the room with the knife. He told officers that he then drew a loaded gun from beneath his pillow and commanded her to leave. When she backed out of the room, he followed, and the two stood several feet apart in the hallway. Mr. Svec claimed his wife would not let him pass and, before he knew what had happened, he had discharged his gun.

{¶4} Although Mr. Svec told the police that he only fired his gun in the hallway just outside his bedroom, the police found a bullet casing in the kitchen on the floor next to the spot where his wife had collapsed. Additionally, the police only discovered small quantities of blood in the hallway leading to the kitchen. The wife's autopsy revealed that she sustained more than one gunshot wound, one of which would have resulted in extensive bleeding. The presence of the casing in the kitchen and the lack of a significant blood trail from the hallway led the police to conclude that Mr. Svec shot his wife in the hallway, but then followed her to the kitchen and shot her again.

{¶5} Mr. Svec was indicted for murder, felony murder, felonious assault, and felonious assault with a deadly weapon. Additionally, each of his charges carried a firearm specification. One week before trial, defense counsel met with Mr. Svec at the jail to discuss their trial strategy. Because she was unable to secure more time with him there, she provided him with her cell phone number. He then called her the next day to continue their conversation. His jail call was recorded and provided to the State shortly thereafter. The State provided the recording to defense counsel as supplemental discovery four days before trial.

{¶6} On the morning of trial, Mr. Svec filed a motion to dismiss his indictment as well as a motion in limine. Both motions were based on the State having violated his constitutional right to counsel by recording and reviewing his privileged conversation. The trial court denied the motion to dismiss, but granted in part the motion in limine. It determined that Mr. Svec's recorded

statements would be inadmissible in the State's case-in-chief, but admissible as impeachment evidence if he chose to take the stand.

{¶7} Mr. Svec ultimately declined to testify in his own defense, and a jury found him guilty on all counts. The court determined that all four of his counts were allied offenses of similar import, and the State elected to have him sentenced on the murder count and its attendant specification. The court sentenced Mr. Svec to a total of 18 years to life in prison.

{¶8} Mr. Svec now appeals from his convictions and raises two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR ONE**

MR. SVEC WAS DENIED DUE PROCESS AND DENIED HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO COUNSEL WHEN PRIVILEGED PHONE CALLS BETWEEN HIM AND HIS ATTORNEY WERE RECORDED FROM THE COUNTY JAIL AND LISTENED TO BY THE STATE OF OHIO.

{¶9} In his first assignment of error, Mr. Svec argues that the trial court erred when it denied his motion to dismiss his indictment. According to Mr. Svec, he was denied due process of law when the State recorded and listened to a telephone conversation between him and his attorney. Upon review, we do not agree that the court erred when it refused to dismiss his indictment.

{¶10} A criminal defendant has a constitutional right "to consult privately with his attorney." *State v. Milligan*, 40 Ohio St.3d 341, 342 (1988).

> Where the unauthorized interception of a private conversation between a criminal defendant and his attorney results in substantial prejudice to the defendant in the preparation of his defense, the trial court may, in the exercise of its sound discretion, take such action as is appropriate, including dismissal of the indictment.

*Id.* at paragraph three of the syllabus.  Prejudice is determined on a case-by-case basis through an analysis of the following factors:

> (1) whether the government deliberately intruded in order to obtain confidential and privileged information, (2) whether the government obtained directly or indirectly any evidence which was or could be used at trial as a result of the intrusion, (3) whether any information obtained was or could be used in any manner detrimental to the defendant, and (4) whether details about trial preparation were learned by the government.

*Id.* at 344, citing *Weatherford v. Bursey*, 429 U.S. 545, 554 (1977).  "Explicit in the *Milligan* test is a requirement that the government deliberately intrude to obtain privileged information." *State v. Hall*, 11th Dist. Lake No. 2001-L-230, 2004-Ohio-3186, ¶ 30.  *Accord State v. Lawson*, 12th Dist. Clermont No. CA2011-07-056, 2012-Ohio-548, ¶ 36-45; *State v. Wakefield*, 4th Dist. Pickaway No. 422, 1980 WL 351084, *2-3 (Sept. 2, 1980).

{¶11}  The morning of trial, Mr. Svec filed a motion to dismiss and a motion in limine.  Both motions were based on the State having recorded a telephone conversation between him and his attorney.  Mr. Svec's attorney indicated that she went to the jail a week earlier to speak with him about his defense.  Though she arrived during visiting hours, she was only permitted to meet with him for thirty minutes.  She, therefore, gave him her cell phone number and told him to call her the next day.  When Mr. Svec did so, he used the inmate line at the jail, and their conversation was recorded.  The jail then provided the recording to the prosecution.

{¶12}  Mr. Svec's attorney acknowledged that "the Lorain County Jail does not offer a private line for client[s] to consult with counsel."  She also acknowledged that Mr. Svec's jail call began with a message, notifying the participants that the call might be monitored or recorded.  Nevertheless, she indicated that she did not believe the call would be recorded, as "may be" recorded and "will be" recorded "are two completely different things."  She argued that her identity as Mr. Svec's attorney was apparent at the start of the call, as he identified her by name.  Because

privileged conversations between a defendant and his attorney are sacrosanct, she argued, the jail should not have been permitted to listen to their call.

{¶13} The State agreed not to introduce any part of the recorded conversation into evidence in its case-in-chief. Relying on that promise, the court partially granted Mr. Svec's motion in limine. It also partially denied the motion, however, finding that Mr. Svec would waive his attorney-client privilege if he chose to take the stand. In that instance, the court ruled, the State would be permitted to cross-examine him on any statements he made to his attorney. Based on its ruling on the motion in limine, the court denied Mr. Svec's motion to dismiss.

{¶14} Mr. Svec argues that the court erred when it refused to dismiss his indictment. According to Mr. Svec, its decision to allow the State to use his privileged conversation for any purpose effectively destroyed his right to counsel. He asserts that he was substantially prejudiced in the preparation of his defense because the recording (1) apprised the State of his trial strategy, and (2) caused him not to testify. Because he suffered substantial prejudice, Mr. Svec argues, the court ought to have dismissed his indictment.

{¶15} Criminal defendants undoubtedly have the right to consult with their attorneys in private. *Milligan*, 40 Ohio St.3d at 342. Yet, for a violation of that right to have occurred, there must have been an *unauthorized* intrusion by the State *for the purpose of obtaining confidential information. See id.* at 344. *Accord Weatherford*, 429 U.S. at 558. For example, state agents may not secretly record an inmate's telephone conversation with his attorney. *See Milligan* at 342-343. Nor may they eavesdrop when an arrestee speaks with his attorney in a secluded area. *See State v. Sugar*, 84 N.J. 1 (1980). The law wards against such surreptitious attempts by law enforcement to circumvent an individual's right to consult privately with counsel. *See* Annotation, *Propriety of Governmental Eavesdropping on Communications Between Accused and His Attorney*, 44

A.L.R. 4th 841, Section 8 (2020). However, it does not require the State to ignore information that its agents have merely overheard or have otherwise obtained through proper channels in the absence of an unauthorized intrusion. *See Lawson*, 2012-Ohio-548, at ¶ 36-45; *Hall*, 2004-Ohio-3186, at ¶ 29-30; *Wakefield*, 1980 WL 351084, at *2-3.

{¶16} Upon review, Mr. Svec failed to demonstrate that the State committed an unauthorized intrusion when it recorded his telephone call. He called his attorney from the jail's inmate line. That line was not a private one, and jail officials never promised him privacy. Indeed, his attorney conceded that the automated system on the jail's inmate line notified them the call might be recorded. The fact that she nevertheless hoped it would not be recorded is inapposite. The recording itself was not surreptitious or specifically initiated because jails officials knew Mr. Svec would be calling his attorney. *Compare Milligan* at 342-343. Rather, the record supports the conclusion that it was made as part of the jail's standard practice of recording inmate phone calls. Moreover, Mr. Svec did not establish that he was forced to make the call because state agents otherwise deprived him of the opportunity to communicate with his attorney. *See Dobbins v. Ohio Bur. of Motor Vehicles*, 75 Ohio St.3d 533, 534-537 (1996). He had just met with his attorney the day before, and he did not explain why it would have been impossible for them to meet again later in the week. There also was no evidence that he asked anyone at the jail if he could conduct his phone call in private. *See State v. Sargent*, 41 Ohio St.2d 85, 89-90 (1975). Mr. Svec never moved for a continuance or otherwise notified the court that he needed more time to consult privately with his attorney. Instead, the record reflects that he and his attorney chose to communicate with one another on a recorded line. Because the recording was not the result of any unauthorized intrusion, no constitutional violation occurred. *See Milligan* at 344; *Lawson* at ¶ 36-45; *Hall* at ¶ 29-30; *Wakefield* at *2-3. Thus, the trial court did not err when it refused to dismiss the indictment or

grant the remainder of Mr. Svec's motion in limine. *See State v. Calise*, 9th Dist. Summit No. 26027, 2012-Ohio-4797, ¶ 42 ("[T]his Court may affirm [a trial court's] ultimate decision on other legally correct grounds."). Mr. Svec's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

MR. SVEC WAS DENIED A FAIR TRIAL AND DENIED DUE PROCESS WHEN THE JURY WAS REPEATEDLY SHOWN INADMISSIBLE, PREJUDICIAL, ANIMATED CRIME SCENE RECONSTRUCTION IMAGES.

{¶17} In his second assignment of error, Mr. Svec argues that the trial court erred by not sua sponte declaring a mistrial when the State repeatedly introduced improper and prejudicial evidence in the form of several computer animated reconstruction images from the crime scene. We disagree.

{¶18} It is well-settled that trial courts are permitted to sua sponte grant mistrials. *E.g., State v. Secessions*, 9th Dist. Summit No. 25754, 2011-Ohio-6066, ¶ 14. As the trial judge is in the best position to determine whether a situation in the courtroom warrants the declaration of a mistrial, we give great deference to the court's discretion in that area. *State v. Hickman*, 9th Dist. Summit No. 27321, 2015-Ohio-4668, ¶ 21. "'Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible.'" *Id.*, quoting *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). "If a defendant fails to move for a mistrial once he discovers the grounds that would form the basis for his motion, then he forfeits all but a claim of plain error." *State v. Litten*, 9th Dist. Summit No. 26812, 2014-Ohio-577, ¶ 27.

{¶19} Mr. Svec argues that a mistrial was warranted when the State repeatedly showed the jury a demonstrative exhibit over his objection. That exhibit was a computer animated crime scene reconstruction. The officer who created it used laser stations to measure and document the layout of the crime scene and the evidence found there. He then inputted those measurements as

data points in a computer program to create a virtual reconstruction of the crime scene. One set of measurements he took were bullet trajectory measurements. A bullet hole was found in the wife's bedroom door and another in the outside wall of her bedroom. By drawing a line between the two holes and into the hallway, the police were able to determine the trajectory of the gunshot that caused the holes and the location where Mr. Svec must have been standing when he fired that shot. Based on that information, the officer who created the reconstruction included in it two virtual characters meant to represent Mr. Svec and his wife. The virtual characters were positioned in the hallway just outside Mr. Svec's bedroom.

{¶20} Mr. Svec objected to the crime scene reconstruction on the basis that it included the virtual characters in the hallway. Although the court sustained his objection, the jury saw the virtual characters before the State had the officer remove them from the exhibit. Further, when the State later introduced still images taken from the reconstruction, the still images also initially contained the virtual characters. At that point, the court had the State reprint the images without the characters. It also instructed the jury that the virtual characters were merely representations of where the State believed Mr. Svec and his wife had been standing, not actual evidence to that effect. The court instructed the jurors that they would ultimately be responsible for determining where the individuals had been located based on their own review of the evidence.

{¶21} Mr. Svec argues that he suffered substantial prejudice when the jury was repeatedly exposed to the virtual characters in the animated reconstruction. He asserts that the State flouted the trial court's initial ruling because it showed the jury images of the virtual characters even after the court determined that they were improper. According to Mr. Svec, the jury's repeated exposure to the images predisposed them to the State's version of the events. He argues that the prejudice he suffered was so great the court ought to have declared a mistrial sua sponte.

{¶22} Upon review, this Court rejects Mr. Svec's argument that the trial court erred by not sua sponte granting a mistrial. Because Mr. Svec did not move for a mistrial, "he forfeit[ed] all but a claim of plain error." *Litten*, 2014-Ohio-577, at ¶ 27. He has not argued plain error on appeal, however, and this Court "'will not sua sponte fashion an unraised plain error argument and then address it.'" *State v. Hamilton*, 9th Dist. Lorain No. 17CA011238, 2019-Ohio-1829, ¶ 8, quoting *State v. Thomas*, 9th Dist. Summit No. 27580, 2015-Ohio-5247, ¶ 9. Even if this Court were to construe his argument as one alleging plain error, he has not shown that the trial court's failure to grant a mistrial affected the outcome of his trial. *See State v. Litten* at ¶ 27, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Mr. Svec told officers numerous times that he shot his wife in the hallway just outside his bedroom. He stated that he and his wife were standing about two to four feet apart at the time, and the gun went off while they were arguing. The bullet trajectory measurements corroborated that statement, as they showed that he fired the gun just outside his bedroom and the bullet traveled across the hall, through his wife's bedroom door, and through the outside wall of the house. The virtual characters merely showed Mr. Svec and his wife standing opposite one another in the hallway just outside his bedroom with a line of trajectory drawn between him and the outside wall of his wife's bedroom. In light of his confession and the bullet trajectory measurements the police obtained from the scene, Mr. Svec has not shown that the jury's exposure to the virtual characters affected his substantial rights. *See Litten* at ¶ 27, quoting *Barnes* at 27. Accordingly, his second assignment of error is overruled.

III.

{¶23} Mr. Svec's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, P. J.
CONCURRING IN JUDGMENT ONLY.

**{¶24}** I concur in the majority's judgment.

**{¶25}** With respect to the first assignment of error, I agree there was not reversible error. "Implicit within the meaning of Section 10, Article I, and the analogous protections of Section 16, Article I, is the right of a criminal defendant to consult privately with his attorney." *State v. Milligan*, 40 Ohio St.3d 341, 342 (1988). "[E]vidence obtained through the unauthorized

interception of a private conversation between a criminal defendant and his attorney is subject to suppression pursuant to Section 10, Article I of the Ohio Constitution." *Id.* A jailer is not permitted to monitor and record telephone calls in violation of the attorney-client privilege. *See State v. Haney,* 2d Dist. Clark No. 2005-CA-100, 2006-Ohio-5578, ¶ 13, citing *State v. Myers*, 5th Dist. Richland No. 03-CA-61, 2004-Ohio-3052, ¶ 59.

{¶26} Nonetheless, "[e]ven where there is an intentional intrusion by the government into the attorney-client relationship, prejudice to the defendant must be shown before any remedy is granted." *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, ¶ 144. Even in cases in which the government possesses the information necessary to fully evaluate prejudice, a prima facie showing must first be made by the defendant before the burden is placed upon the State. *See Milligan*, 40 Ohio St.3d at 345. In determining whether the defendant was prejudiced by any unauthorized acts, four factors are considered: "(1) whether the government deliberately intruded in order to obtain confidential and privileged information, (2) whether the government obtained directly or indirectly any evidence which was or could be used at trial as a result of the intrusion, (3) whether any information obtained was or could be used in any manner detrimental to the defendant, and (4) whether details about trial preparation were learned by the government." *Id.* at 344.

{¶27} Svec's argument on appeal concerning prejudice is not adequately developed. *See* App.R. 16(A)(7). He contends that he did not testify at trial because the trial court authorized the State to use the phone call to impeach his testimony; however, he points to nowhere in the record that establishes that that was his reason for not testifying. *See* App.R. 16(A)(7). Svec also asserts that the State was aware of his trial strategy due to the interception of the phone call. However, the phone call was not played in the trial court or admitted into evidence at the hearing on the issue. In fact, the hearing consisted only of argument. While Svec's counsel did argue that the

phone call involved trial strategy, Svec did not submit affidavits in support of his motions or present testimony at the hearing. Thus, there is no evidence to support that the phone call discussed trial strategy. Given the foregoing, I would conclude that Svec failed to demonstrate reversible error on appeal.

{¶28} As to Svec's second assignment of error, I agree that he failed to meet his burden of demonstrating plain error on appeal. Svec has not developed an argument on appeal demonstrating that the result of the trial would have been otherwise had a mistrial been granted. *See State v. Jones*, 160 Ohio St.3d 314, 2020-Ohio-3051, ¶ 17; *see* App.R. 16(A)(7).

HENSAL, J.
CONCURRING IN JUDGMENT ONLY.

{¶29} While I agree that Mr. Svec's first assignment of error must be overruled, I would do so on a different basis. It is well-established that appellate courts should not reach constitutional issues unless "absolutely necessary." *In re D.S.*, 152 Ohio St.3d 109, 2017-Ohio-8289, ¶ 7, quoting *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, ¶ 9. As the Ohio Supreme Court has stated,

> "[e]ven where there is an intentional intrusion by the government into the attorney-client relationship, prejudice to the defendant must be shown before any remedy is granted." *United States v. Steele*, 727 F.2d 580, 586 (6th Cir.1984), citing *United States v. Morrison*, 449 U.S. 361, 365-366, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). To determine prejudice, a court must look to the factors identified in *Weatherford*: "(1) whether the government deliberately intruded in order to obtain confidential and privileged information, (2) whether the government obtained directly or indirectly any evidence which was or could be used at trial as a result of the intrusion, (3) whether any information obtained was or could be used in any manner detrimental to the defendant, and (4) whether details about trial preparation were learned by the government." [*State v.*] *Milligan,* 40 Ohio St.3d [341,] 344 [(1988)].

*State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, ¶ 144. In his merit brief on appeal, Mr. Svec asserts that he suffered prejudice because the State was aware of his trial strategy, and – since the

trial court authorized the State to use the recorded phone call to impeach his testimony – he chose not to testify. Mr. Svec, however, has not pointed to anything in the record that supports his position in this regard. As the State points out, the recorded phone call was not played or admitted into evidence during the hearing on the matter, and Mr. Svec did not provide testimonial evidence in the form of in-court testimony or an affidavit. Given the lack of evidence in the record to support Mr. Svec's claim that he suffered prejudice, I would hold that he has failed to establish reversible error on appeal. Because the failure to establish prejudice is dispositive, I would not address the constitutional issues raised in Mr. Svec's first assignment of error. I, therefore, concur in judgment only with respect to the first assignment of error. I concur with the resolution of the second assignment of error.

APPEARANCES:

DENISE G. WILMS, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and BRIAN P. MURPHY, Assistant Prosecuting Attorney, for Appellee.